# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RICHARD K. WORRELL,**    CASE NO. 2:08-cv-271
                          JUDGE SMITH
    **Petitioner,**    MAGISTRATE JUDGE KEMP

v.

**MICHAEL SHEETS, Warden,**

    **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition as amended, respondent's return of writ, petitioner's traverse, respondent's reply, petitioner's sur reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an evidentiary hearing is **DENIED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> The Franklin County Grand Jury indicted appellant on the above charges on August 16, 2002. Although the charges stem from incidents against appellant's wife, the indictment on the rapes incorrectly specified that the victim was not appellant's spouse. Plaintiff-appellee, the State of Ohio, moved to amend the indictment by deleting the phrase "not his spouse" in reference to the victim. The trial court granted the amendment over appellant's objection.
>
> Appellant pled not guilty, and a jury trial commenced.

Appellant was disruptive during appellee's opening statement, and the trial court had to instruct appellant that it wanted "absolutely no demonstrations of anything." (Tr. at 50, Vol. I.)

Appellee called appellant's wife to testify at trial. Appellant's wife testified that, on July 21, 2002, appellant summoned her upstairs to the bedroom. Appellant spoke in a "firm and tense" manner, and had been "very tense and angry, starting with the prior Sunday." (Tr. at 61, Vol. I.) Appellant's wife testified that she went upstairs "[b]ecause I knew if I didn't, that the consequences would be worse than what might happen upstairs, which I knew when he said, come upstairs, that meant he wanted to have sex." (Tr. at 68, Vol. I.) She then stated that appellant had her lie on the bed, and he forced fellatio by ramming his penis in her mouth. The victim described being unable to breathe and asking appellant to stop. However, appellant ignored her request and rammed his penis in her throat "for longer and longer periods of time before he would take a break." (Tr. at 94, Vol. I.) Appellant's wife noted that she struggled, coughed, and choked during the fellatio.

Appellant's wife also testified that appellant forced anal and vaginal sex on her. During the vaginal sex, appellant pulled her hair out and yanked her "tongue into his mouth so hard that it caused a blood blister" on her tongue and "caused the little flap between [her] tongue and [her] gum to tear." (Tr. at 95-96, Vol. I.)

Next, according to appellant's wife, on July 25, 2002, appellant grabbed her by the hair, pulled her out of a chair, and started striking her with his knee on her lower back and hip. Appellant held her by the hair to prevent her from leaving and choked her. As a result of the incident, appellant's wife sustained bruising over her lower back and hip.

Appellant's wife then testified that she and her children subsequently moved out of the house. She also sought medical treatment at a hospital. Appellant's wife told the medical staff about the physical abuse of July 25, 2002, but refused a rape examination. The medical staff took X-rays of her back and hip to determine whether she sustained fractures. The staff also

took a urine sample because appellant's wife complained of frequent urination and pain to her kidneys.

Subsequently, appellant's wife testified that she and the children moved back in with appellant and that they went on their scheduled vacation to New Jersey. Appellant's wife indicated that she wore clothes that covered the bruises while on vacation. Additionally, during the vacation, appellant told his wife that her bruises made him feel "like a man and it makes me feel like raping the hell out of you." (Tr. at 134, Vol. I.) Ultimately, appellant's wife decided to terminate the vacation early and made arrangements for her and the children to travel back to Ohio. When appellant's wife returned to Ohio, she obtained an attorney to institute divorce proceedings and reported the July 2002 sexual and physical abuse to law enforcement.

Appellant's wife further testified that appellant physically abused her throughout the marriage. Appellant would also damage their property during arguments. Appellant's wife took photos of the damage to the property and the injuries she sustained from the abuse. The trial court admitted the photos into evidence over appellant's objection.

Moreover, appellant's wife indicated at trial that appellant had previously threatened to kill her if she called the police on him. When appellant's wife did call the police after a previous incident of physical abuse, appellant punished her with anal sex.

Lastly, appellant's wife testified that she pursued charges against appellant "to accomplish justice for what he did to me." (Tr. at 174, Vol. I.)

The emergency room doctor that treated appellant's wife also testified. The doctor stated that the bruising on appellant's wife would have generally taken two to three weeks to heal. The doctor also stated that appellant's wife "had reason to be seen in the emergency room." (Tr. at 308, Vol. II.)

Appellant also testified at trial. Appellant testified that his wife

consented to the sexual contact on July 21, 2002. In addition, appellant described the July 25, 2002 incident as a mutual fight.

Appellant admitted at trial to previously hitting his wife with a belt and with his fists. He also indicated that his wife "depends on my leadership." (Tr. at 643, Vol. III.) Moreover, appellant testified that he is approximately six feet tall and that his wife's height is no more than five feet and three inches. In addition, appellant testified that his wife weighs "considerably less" than he. (Tr. at 627, Vol. III.)

Next, appellant admitted during appellee's questioning that he might have told a psychologist that he punished his wife with sex. Lastly, appellant told appellee that he blamed law enforcement and prosecutors for pursuing charges against him and destroying his family.

At the conclusion of evidence, appellant proposed a jury instruction defining "serious physical harm," an element of felonious assault. R.C. 2903.11. The proposed instruction expanded the statutory definition of "serious physical harm" and stated:

The definition of "serious physical harm to persons" includes: *** any physical harm involving temporary though substantial disability, such as an injury or illness requiring more or less prolonged hospitalization or bed rest which temporarily interferes with the victim's ability to work, as with a broken limb or mononucleosis; any physical harm involving * * * temporary though serious disfigurement reparable through plastic surgery * * *.

The trial court did not give the proposed instruction to the jury.

During deliberations, the jury asked for more information on the terms "disfigurement" and "serious disfigurement" as used in the statutory definition of "serious physical harm." (Tr. at 798, Vol. IV.) The trial court told the jury to determine the terms' normal, every day usage. Id.

The jury found appellant guilty as charged, and the trial court

4

> held sexual predator and sentencing hearings. At the sexual predator hearing, appellee relied on the pre-sentence investigation report and the evidence admitted at trial to establish that appellant is a sexual predator. In the pre-sentence investigation report, appellant's wife stated that her bruising lasted for six weeks, that she had nightmares and sleepless nights for weeks after the July 2002 incidents, and that she has been in counseling since the incidents. The trial court adjudicated appellant a sexual predator.
>
> At the sentencing hearing, the trial court merged the felonious assault and abduction charges into the kidnapping charge. The trial court sentenced appellant to consecutive prison terms of five years on each rape charge and four years on the kidnapping charge. Thus, the trial court did not sentence appellant to the minimum authorized sentences even though he had not previously served a prison term.

*State v. Worrell*, 2005 WL 736529 (Ohio App. 10th Dist. March 31, 2005). Petitioner filed a timely appeal in which he raised the following assignments of error:

> I. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO AMEND COUNTS I, II AND III FROM ALLEGING RAPE OF A NON SPOUSE PURSUANT TO 2907.02(A)(1) TO RAPE OF A SPOUSE PURSUANT TO 2407.02(A)(2) [sic] RATHER THAN REQUIRING THE STATE TO RESUBMIT THE MATTER TO THE GRAND JURY THEREBY DEPRIVING DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO GRAND JURY CONSIDERATION.
>
> II. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE MASSIVE AMOUNTS OF EVIDENCE, BOTH TESTIMONY AND EXHIBITS OF OTHER ALLEGED ACTS OF DEFENDANT THAT WERE NOT PART OF THE CHARGES UPON WHICH DEFENDANT WAS BEING TRIED.
>
> III. THE TRIAL COURT ERRED IN REFUSING TO GIVE DEFENDANT'S REQUESTED JURY INSTRUCTION CLARIFYING THE TERM SERIOUS PHYSICAL HARM TO THE JURY.

> IV. THE CONVICTIONS FOR RAPE, [KIDNAPPING], FELONIOUS ASSAULT AND ABDUCTION ARE NOT SUPPORTED BY THE EVIDENCE REQUIRED BY LAW.
>
> V. THE CONVICTION FOR RAPE, [KIDNAPPING], FELONIOUS ASSAULT AND ABDUCTION ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> VI. THE TRIAL COURT HAVING FAILED TO MAKE REQUIRED FINDINGS AND THE EVIDENCE NOT SUPPORTING ANY SUCH FINDING THE IMPOSITION OF CONSECUTIVE SENTENCES IS CONTRARY TO LAW.
>
> VII. THE TRIAL COURT ERRED BY IMPOSING MORE THAN A MINIMUM SENTENCE ON ANY COUNT AND FAILING TO MAKE THE REQUIRED FINDINGS TO JUSTIFY IMPOSING MORE THAN A MINIMUM SENTENCE.
>
> VIII. THE TRIAL COURT'S FINDING THE DEFENDANT TO BE A SEXUAL PREDATOR IS NOT SUPPORTED BY THE QUANTUM OF EVIDENCE REQUIRED BY LAW AND IS CONTRARY TO LAW.

*See id.* On March 31, 2005, the appellate court affirmed the trial court's judgment. *Id.*

Petitioner filed a timely appeal to the Ohio Supreme Court.

> On May 3, 2006, the Supreme Court of Ohio reversed in part the judgment of this court, and remanded the cause to the trial court for resentencing consistent with *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856. Upon remand, the trial court imposed the same sentence that previously was imposed. Specifically, on June 8, 2006, the trial court entered judgment resentencing defendant to consecutive prison terms of five years on each rape charge and four years on the kidnapping charge, for a total sentence of 19 years in prison.

*State v. Worrell*, 2007 WL 1346580 (Ohio App. 10th Dist. 2007). Petitioner again filed an appeal. He asserted the following assignments of error:

> I. THE TRIAL COURT, UPON REMAND BY THE OHIO SUPREME COURT AFTER VACATION OF DEFENDANT'S SENTENCE FOR MULTIPLE FELONY COUNTS PURSUANT TO THE RULING IN *STATE V. FOSTER*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006) LACKED STATUTORY AUTHORITY TO IMPOSE CONSECUTIVE SENTENCES AND SAID SENTENCE IS THEREFORE CONTRARY TO LAW.
>
> II. THE SENTENCE IMPOSED BY THE TRIAL COURT UPON REMAND BY THE OHIO SUPREME COURT WHEREIN CONSECUTIVE NON MINIMUM SENTENCES WERE IMPOSED DEPRIVED THE DEFENDANT OF DUE PROCESS, EQUAL PROTECTION AND 6TH AMENDMENT RIGHTS GUARANTEED HIM PURSUANT TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION.

*See id.* On May 3, 2007, the appellate court affirmed the trial court's judgment. *Id.*[1] On October 3, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *Exhibit 27 to Return of Writ.*

On March 21, 2008, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner asserts the following sole claim for federal habeas corpus relief:

> Petitioner respectfully asserts that, in light of the holding in *State v. Foster*, the State did not have jurisdiction to sentence petitioner to consecutive sentences under Ohio and federal law.

It is the position of the respondent that this claim lacks merit.

### MERITS

Petitioner asserts that he was denied due process because the trial court lacked

---

[1] The state appellate court denied petitioner's motion for reconsideration. *See Exhibits 22-24 to Return of Writ.*

jurisdiction to re-sentence him to consecutive terms of incarceration after the Ohio Supreme Court's decision in *State v. Foster, supra*. Specifically, petitioner contends that, because the Ohio Supreme Court in *Foster* struck provisions of Ohio's sentencing statutes, *i.e.*, O.R.C. §§2929.14(E)(4), and 2929.41(A), which had authorized imposition of consecutive terms of incarceration after judicial fact finding as unconstitutional, Ohio's trial courts are without statutory authorization and no longer have jurisdiction under Ohio law to impose consecutive sentences.² Accordingly, petitioner asserts that the trial court's imposition of

---

² The Ohio Supreme Court summarized these provisions of Ohio's sentencing statutes in *Foster* as follows:

> R.C. 2929.14(E)(4) requires the court to find that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." In addition, at least one of three more findings of fact must be found: that the offender was already under**491 control of the court due to an earlier conviction, FN83 that at least two of the offenses were committed as part of a course of conduct and the harm was so great or unusual that no single prison term adequately reflects the seriousness of the conduct, FN84 or that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public." FN85
>
> FN83. R.C. 2929.14(E)(4)(a).
>
> FN84. R.C. 2929.14(E)(4)(b).
>
> FN85. R.C. 2929.14(E)(4)(c).
>
> While other state courts have held that their statutes on consecutive sentences do not violate *Blakely* FN86 Ohio appears to be unique in having a rule that sentences of imprisonment shall be served concurrently. See R.C. 2929.41(A); *State v. Barnhouse,* 102 Ohio St.3d 221, 2004-Ohio-2492, 808 N.E.2d 874, at ¶ 11.R.C. 2929.41(A) states, " *Except as provided in* division (B) of this section, division (E) of section 2929.14, or division (D) or (E) of section

three consecutive terms of incarceration on his three rape convictions was constitutionally invalid. In his traverse, petitioner further contends that O.R.C. §5145.01[3] compels a

---

> 2971.03 of the Revised Code, *a prison term*, jail term, or sentence of imprisonment *shall be served concurrently* with any other prison term." (Emphasis added.) Thus, except for certain enumerated statutes imposing nondiscretionary consecutive terms, FN87 judicial fact-finding must occur before consecutive sentences may be imposed under R.C. 2929.14(E)(4). We have held previously that R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) require trial courts that impose consecutive sentences to make the statutorily enumerated findings and to give reasons at the sentencing hearing to support those findings for review on appeal. *State v. Comer,* 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.

*State v. Foster, supra,* 109 Ohio St.3d at 20-21.

[3] O.R.C. 5145.01 provides:

Courts shall impose sentences to a state correctional institution for felonies pursuant to sections 2929.13 and 2929.14 of the Revised Code. All prison terms may be ended in the manner provided by law, but no prison term shall exceed the maximum term provided for the felony of which the prisoner was convicted as extended pursuant to section 2929.141 or 2967.28 of the Revised Code.

If a prisoner is sentenced for two or more separate felonies, the prisoner's term of imprisonment shall run as a concurrent sentence, except if the consecutive sentence provisions of sections 2929.14 and 2929.41 of the Revised Code apply. If sentenced consecutively, for the purposes of sections 5145.01 to 5145.27 of the Revised Code, the prisoner shall be held to be serving one continuous term of imprisonment.

If a court imposes a sentence to a state correctional institution for a felony of the fourth or fifth degree, the department of rehabilitation and correction, notwithstanding the court's designation of a state correctional institution as the place of service of the sentence, may designate that the person sentenced is to be housed in a county, multicounty, municipal, municipal-county, or multicounty-municipal jail or workhouse if authorized pursuant to section 5120.161 of the Revised Code.

conclusion that the state courts lack authority, after *Foster*, to impose consecutive sentences. *See Reply*, Doc. No. 7. Respondent contends that petitioner's argument involving the impact of *Foster* on O.R.C. §5145.01 was never presented to the state courts and therefore is procedurally defaulted. *See Reply to Traverse*, Doc. No. 11.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review

---

> If, through oversight or otherwise, a person is sentenced to a state correctional institution under a definite term for an offense for which a definite term of imprisonment is not provided by statute, the sentence shall not thereby become void, but the person shall be subject to the liabilities of such sections and receive the benefits thereof, as if the person had been sentenced in the manner required by this section.
>
> As used in this section, "prison term" has the same meaning as in section 2929.01 of the Revised Code.

unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

Review of the record reflects that petitioner did not raise any argument regarding application of O.R.C. §5145.01 to prohibit imposition of consecutive sentences after *Foster* on direct appeal, nor did he raise such issue in his motion for reconsideration in the state appellate court. *See Exhibits 19, 22 to Return of Writ*. Further, he may now no longer present

such issue to the state courts under Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). Therefore, it appears that petitioner has waived this claim for federal habeas corpus review. Further, he has failed to establish cause for this procedural default.

Petitioner, however, contends that his argument regarding application of O.R.C. §5145.01 to bar imposition of consecutive sentences after *Foster* raises no new legal theory not already presented to the state courts, but simply provides further support for his argument here. *See Petitioner's Sur Reply*, Doc. No. 12. Even accepting such contention as true, however, the record fails to reflect any basis for federal habeas corpus relief.

The state appellate court rejected petitioner's claim as follows:

> By his first assignment of error, defendant argues that the trial court lacked the statutory authority to impose consecutive sentences, and, therefore, the sentences are contrary to law. In his second assignment of error, defendant argues that the trial court imposed consecutive non-minimum sentences in violation of due process, equal protection, and the Sixth Amendment to the United States Constitution. Defendant's arguments under his second assignment of error are premised on his contention that the trial court lacked statutory authority to impose consecutive sentences under the circumstances of this case. Defendant does not otherwise develop any argument as to why his sentences were unconstitutional.
>
> Defendant contends that, before the *Foster* decision, the authority of a trial court to impose consecutive sentences derived from R.C. 2929.14(E) and 2929.41(A). Pursuant to *Foster*, those provisions were severed from Ohio's felony sentencing scheme. *See id.* at paragraph four of the syllabus. According to defendant's reasoning, upon the severance of those provisions, trial courts no longer are authorized to impose consecutive sentences under the circumstances found

in this case.

Before the *Foster* decision, judicial fact-finding was required before consecutive sentences could be imposed, except when certain enumerated statutes imposing nondiscretionary consecutive terms applied. See *Foster,* at ¶ 66. In *Foster,* the Supreme Court of Ohio, following *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, found portions of Ohio's felony sentencing scheme, including R.C. 2929.14(E)(4) and 2929.41(A), unconstitutional because those portions required judicial fact-finding in violation of a defendant's Sixth Amendment right to a trial by jury. Concluding that R.C. 2929.14(E)(4) and 2929.41(A) were capable of being severed, the Supreme Court of Ohio severed in their entirety these statutory sections. *Foster,* at ¶ 97, 99, 845 N.E.2d 470; and paragraph four of the syllabus.

In view of the *Foster* court's severance of the unconstitutional provisions, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id.* at paragraph seven of the syllabus. The *Foster* court additionally stated: "If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively." *Id.* at ¶ 105, 845 N.E.2d 470.

Thus, pursuant to *Foster,* trial courts generally have the discretionary power to impose consecutive sentences. See *State v. Saxon,* 109 Ohio St.3d 176, 846 N.E.2d 824, 2006-Ohio1245, ¶ 9, citing *Foster* ("Only after the judge has imposed a separate prison term for each offense may the judge then consider in his discretion whether the offender should serve those terms concurrently or consecutively.") Notwithstanding that general rule, there still remain circumstances that require the imposition of consecutive sentences. See *Foster,* at ¶ 66, citing R.C. 2929.14(E)(1) through (3). In those circumstances, a trial court lacks discretion regarding whether to impose consecutive or concurrent sentences. See *Foster,* at ¶ 66. Nonetheless, this case does not involve one of those circumstances. Thus,

pursuant to *Foster,* the trial court in this case had discretion as to whether defendant should serve his sentences consecutively or concurrently.

However, according to defendant, the trial court lacked the authority to impose consecutive sentences. Thus, despite the *Foster* decision, defendant urges this court to find that the trial court in this case acted contrary to law by imposing consecutive sentences. Such a finding would be contrary to the *Foster* decision. As an intermediate appellate court, we will not make a determination that conflicts with a decision of the Supreme Court of Ohio that has not been reversed or overruled. "A court of appeals is bound by and must follow decisions of the Ohio Supreme Court, which are regarded as law unless and until reversed or overruled." *Sherman v. Millhon* (June 16, 1992), Franklin App. No. 92AP-89, citing both *Battig v. Forshey* (1982), 7 Ohio App.3d 72, 454 N.E.2d 168, and *Thacker v. Bd. of Trustees of Ohio State Univ.* (1971), 31 Ohio App.2d 17, 285 N.E.2d 380.

Furthermore, to the extent the *Foster* court did not expressly discuss the source of a trial court's authority to impose consecutive sentences, we note that previous Ohio Supreme Court decisions expressly endorsed the idea that the authority of a court to impose consecutive sentences derives from the common law. In *Henderson v. James* (1895), 52 Ohio St. 242, 254-255, 39 N.E. 805, the Supreme Court recognized the existence of a trial court's inherent power, derived from the common law, to impose consecutive sentences:

* * * As we have no statute authorizing cumulative sentences for crime, it would seem at first blush that such sentences should not be permitted in this state; but this court, with the courts of most of the other states, as well as England, has sustained cumulative sentences without the aid of a statute. * * * The great weight of authority is in favor of cumulative sentences, and they should be upheld on principle. The severe punishments which induced judges to invent technicalities to aid the acquittal of those on trial, on criminal charges, no longer exist; and, under our just and humane statutes, those who violate the law should be duly punished for each offense.

> * * * See, also, *State ex rel. Stratton v. Maxwell* (1963), 175 Ohio St. 65, 67, 191 N.E.2d 549 (citing *Henderson* for the proposition that "a court has the power to impose consecutive sentences"). Moreover, in *Stewart v. Maxwell* (1963), 174 Ohio St. 180, 181, 187 N.E.2d 888, the Supreme Court stated that "in the absence of statute, it is a matter solely within the discretion of the sentencing court as to whether sentences shall run consecutively or concurrently."
>
> Based on the foregoing, we find defendant's first assignment of error to be without merit and it is accordingly overruled. Additionally, because we find no merit in defendant's first assignment of error, we also overrule his second assignment of error.

*State v. Worrell, supra,* 2007 WL 1346580.

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established federal law or was based on an unreasonable determination of the facts of record. 28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an

15

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> The AEDPA limits the source of law to cases directed by the United States Supreme Court. 28 U.S.C. § 2254(d) prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir.1998).
>
> To justify a grant of habeas relief under § 2254(d), a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its *dicta,* as of the time of the relevant state court decision. *Williams v. Taylor,* 529 U.S. 362 (2000). The Supreme Court in *Williams* held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id*

*Williams v. Lavigne,* 2006 WL 2524220 (W.D. Michigan August 30, 2006). Petitioner has

16

failed to meet this standard here.

The crux of petitioner's argument involves interpretation of state law. Petitioner has failed to refer to any decisions of the United States Supreme Court indicating that he is entitled to relief. Notably, the Ohio Supreme Court in *State v. Bates*, 118 Ohio St.3d 174, 179 (2008), rejected petitioner's argument that the Ohio courts lack jurisdiction, after *Foster*, to impose consecutive sentences as follows:

> The severance and excision of former R.C. 2929.14(E)(4) and former R.C. 2929.41(A) in their entirety by *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph four of the syllabus, leaves no statute to establish in the circumstances before us presumptions for concurrent and consecutive sentencing or to limit trial court discretion beyond the basic "purposes and principles of sentencing" provision articulated and set forth in R.C. 2929.11 and 2929.12. As a result, the common-law presumptions are reinstated. 73 American Jurisprudence 2d (2007), Statutes, Section 271 (the repeal of a statute that abrogates the common law operates to reinstate the common-law rule). Such a conclusion is also consistent with the perspective of the Ohio Criminal Sentencing Commission, which opined that after *Foster,* judges have broader discretion within felony ranges to impose definite and consecutive sentences. Diroll, A Decade of Sentencing Reform, A Sentencing Commission Staff Report (Mar.2007) 19. In particular, "[j]udges are no longer guided to give concurrent sentences unless circumstances argue that consecutive sentences are more appropriate." *Id*.
>
> Accordingly, the trial court now has the discretion and inherent authority to determine whether a prison sentence within the statutory range shall run consecutively or concurrently, and we hold that the trial court may impose a prison sentence to be served consecutively to a prison sentence imposed on the same offender by another Ohio court. *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus; *Stewart,* 174 Ohio St. at 181, 22 O.O.2d

17

116, 187 N.E.2d 888.

*Id*.

Petitioner contends that *Bates* is inapplicable, because the Ohio Supreme Court was not addressing the precise issue raised herein,[4] and that *Bates*, as well as the decision of the state appellate court rejecting his claim, were wrongly decided. *See Reply*, Doc. No. 7. However, a federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

---

[4] Although the precise issue before the Ohio Supreme Court in *Bates* was "whether, after *Foster*, a trial court imposing a sentence for a new felony conviction may order that sentence to be served consecutively to a sentence previously imposed for a separate felony conviction in a different Ohio court," and the Ohio Supreme Court concluded that it could, the parties in *Bates* agreed that a trial court could impose consecutive prison terms on multiple felony convictions adjudicated in the same proceeding, which is the issue challenged by petitioner herein. *Bates, supra*, at 188 Ohio St.3d at 176. Therefore, *Bates* does not support petitioner's argument.

18

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an evidentiary hearing is **DENIED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge